**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**REESE LLP**
Charles D. Moore (to be admitted to S.D.N.Y. bar)
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Fax: 212-253-4272
Email: *cmoore@reesellp.com*

**QUAT LAW OFFICES**
Kenneth D. Quat (to be admitted *pro hac vice*)
373 Winch Street
Framingham, Massachusetts 01701
Telephone: (508) 872-1261
Email: *ken@quatlaw.com*

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WILLIAM RANDOLPH,** **individually and on behalf of a class of similarly situated persons,** | **Case No. 21-cv-10858** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MONDELEZ INTERNATIONAL, INC.,** **Defendant.** | |

Plaintiff brings suit on behalf of himself and all persons similarly situated who purchased one or more packages of "Stoned Wheat Thins" (the "Product")[1] in any of its three varieties. The Product is manufactured by Defendant and sold under the brand name "Red Oval Farms." Defendant's branding and labeling of the Product conveys a message to consumers that is deceptive and misleading in that it conveys that the main ingredient of the Product of stoneground whole wheat flour.  This is untrue, as the main ingredient is, in fact, inferior, unbleached enriched flour (a.k.a. "white flour"). Plaintiffs and all class members were harmed by paying more to purchase the Product than they would have been willing to pay had it not been misrepresented by Defendant.

## PARTIES

1.      Plaintiff William Randolph is an individual who resides in Manhattan, New York. Plaintiff bought Stoned Wheat Thins, Mini Stoned Wheat Thins, and Stoned Wheat Thins Low Sodium from various retail stores on the Upper West Side on a bi-monthly basis from the beginning of the Class Period to 2019, believing that the main ingredient of the Product was stoneground whole wheat flour.  Had Plaintiff known the truth that the main ingredient was not stone ground wheat flour (but rather, unbleached enriched flour, a.k.a. "white flour") he would not have bought the Product.

2.      Defendant Mondelez International, Inc, is incorporated under the laws of the State of Virginia, with a principal place of business located at 905 West Fulton Market, Suite 200, Chicago, Illinois 60607.

---

[1] The Product is a snack cracker that is distributed and sold throughout the United States in three varieties – "Stoned Wheat Thins," "Mini Stoned Wheat Thins," and "Stoned Wheat Thins Low Sodium." The three varieties are collectively referred to as "The Product".

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  None of the exceptions of 28 U.S.C. §1332(d) are applicable.

4.      This court has personal jurisdiction over Defendant because it conducts and transacts business within New York, and contracts to supply and supplies products within New York, including the Products.

5.      Venue is proper because Plaintiff and many class members reside in this District, Defendants do business in this District and in New York, and a substantial part of events and omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

   **A.  Stoneground flour has superior health benefits compared to industrially-milled flour.**

6.      Stone grinding is a traditional method of producing flour that has been shown to have a higher nutritional value than flour produced by modern industrial methods (typically, steel roller-mills that process grain rapidly at high temperatures). Stone grinding "employs a pair of ridged stones to crush and grind grains slowly, without creating heat that can destroy nutrients. The ground flour is sifted to catch larger particles of bran and germ, which are then ground again and mixed with the rest of the flour to produce a more nutritious flour."[2]

---

[2] https://www.lehvoss-nutrition.com/news/industry-news.html?resource=/assets/food-guide/flour/~default.

7.      Indeed, "[o]nly whole grain stone-ground flour is sure to contain the grain components in their original proportions and to include the germ. The way the stones grind distributes the germ oil evenly and without exposing it to excess heat, so rancidity does not develop as quickly as it would were it ground by steel roller-mills."[3]

8.      As this authority further explains:

> There are several advantages to stone-ground wheat flour. The endosperm, bran, and germ remain in their natural, original proportions. Because the stones grind slowly, the wheat germ is not exposed to excessive temperatures. Heat causes the fat from the germ portion to oxidize and become rancid and much of the vitamins to be destroyed (Aubert, 1989). Since only a small amount of grain is ground at once, the fat from the germ is well distributed which also minimizes spoilage (Mount, 1975). Nutritive losses due to oxygen exposure are also limited by the fact that stone-ground flour is usually coarser (Thomas, 1976). As expressed in The Bread Book (Leonard, 1990), stone-ground flour is preferred by many bakers and natural food advocates because of its texture, its sweet and nutty flavour, and the beliefs that it is nutritionally superior and has a better baking quality than steel-roller-milled flour. Moritz and Jones (1950) and Schultz et al. (1942) showed that stone-milled flour was relatively high in thiamin, compared to roller-milled flour, especially when from hard wheat.

*Id.*

9.      And another authority contrasts stone-grinding and industrial milling as follows:

> Industrial mills produce white flour and then process it (add germ and bran back in again) to produce whole grain flour on demand.  In this process there is no way to guarantee that whole grain flour is actually whole grain. Because stone mills produce whole grain flour, the ground endosperm (the white bit) has the benefit of being ground alongside the oily germ during the whole process.  The ground endosperm thus absorbs some of the oils and nutrients of the germ.  Because industrial mills begin removing the germ and the bran at the beginning of the process, the ground endosperm has less opportunity to mingle with the oily germ and, thus, absorbs little of the nutrients contained in it.[4]

10.     Another commentator observes: "In stone ground, whole-grain products, phenolic compounds are found in high quantities because the bran is fully incorporated into the flour from

---

[3] http://www.eap.mcgill.ca/publications/EAP35.htm.
[4] https://www.virtuousbread.com/bread-and-baking/if-you-must-eat-white-bread-at-least-buy-good-flour/.

the beginning of the process. In commercially produced grains, the phenolic compounds varied with the grain and the amount of bran within each product."[5]

**B.  Consumers accurately perceive stoneground wheat flour as healthier than conventionally milled wheat flour and are willing to pay more for it.**

11.     In recent years the market for stoneground wheat flour products has expanded rapidly as a result of the growing public demand for foods perceived as healthier, more nutritious, and more natural, in particular foods made with whole grains. As one commentator states:

> [The] stoneground wheat market has become popular because of the buyer interest for the healthful entire grain flour since supplements and nutrients are normally lost in the roller processing. The development of the stoneground wheat market is credited to the ascent in wellbeing cognizance among customers and furthermore because of the interest for items which are created by regular cycles.[6]

12.     It is well-established that consumers are willing to, and do, pay more to purchase foods believed to be healthy.[7] With respect to stoneground wheat flour in particular, it has been observed that "[f]or millions of consumers, it's worth paying a premium to buy baked goods made from this elemental flour, ground on stone as it has been for thousands of years."[8]

---

[5] Ceclia T. Crine, Michael H. Tunick, & Rosemary E. Trout, *The chemical and attitudinal differences between commercial and artisanal products*, NPJ SCIENCE OF FOOD (2019), *available at https://www.nature.com/articles/s41538-019-0053-9.*

[6] https://www.transparencymarketresearch.com/stonground-wheat-market.html.

[7] *See,* e.g., Neilsen's 2015 Global Health & Wellness Survey ("88% of those polled are willing to pay more for healthier foods").

[8] http://usatoday30.usatoday.com/news/health/2006-03-13-stone-ground-flour_x.htm

### C.  The labeling of the Product conveys to reasonable consumers that a main ingredient is stoneground wheat flour, a message that is false.

13.     The Product is a snack cracker that is distributed and sold throughout the United States in three varieties – "Stoned Wheat Thins," "Mini Stoned Wheat Thins," and "Stoned Wheat Thins Low Sodium." The "Stoned Wheat Thins" package is shown here:



14.     The "Mini Stoned Wheat Thins" package is shown here:



15.     The "Stoned Wheat Thins Low Sodium" package is shown here:



16.     The Product's name, "Stoned Wheat Thins" – which is depicted in bold white print against a contrasting red background - conveys to reasonable consumers that the Product contains stoneground whole wheat flour. The accompanying graphics of a wheat field under a blue sky reinforce the message of a wholesome, natural product.

17.     Plaintiffs conducted a consumer survey in which 828 consumers were shown the image depicted in paragraph 13, above, and were asked to select – based on the Product's packaging – the three main ingredients of the Product. The choices provided were the Product ingredients set forth in Defendant's ingredients list with the addition of stoneground wheat flour. A substantial majority of respondents – 80.1% - selected "stoneground wheat flour" as one of the three main ingredients in the Product, the highest percentage for all of the ingredients listed, and 62.9% of them indicated this factor would make them more likely to purchase the Product. *See* Ex. A.

18.     Unfortunately for consumers, the main ingredients in the Products is not stoneground whole wheat flour.  Instead, it is unbleached enriched flour (a.k.a. "white flour").

**D.   Consumers accurately perceive whole wheat flour as healthier than regular wheat flour and are willing to pay more for it.**

19.     A recent survey found that 64% of Gen Z and Millennial consumers, 67% of parents of young children, and 74% of health-conscious consumers choose whole grain products at least half of the time.[9]

20.     The widespread consumer preference for whole grain products is justified by the science. Whole grains "contain all the essential parts and naturally-occurring nutrients of the entire grain seed in their original proportions . . ."[10] Thus, it is well-accepted that whole grain products are healthier than products where the grain has been processed to remove some of the kernel and/or nutrients. As the Mayo Clinic states: "whole grains [are] the healthiest kinds of grains [and] in particular are an important part of a healthy diet . . [they] are linked to a lower risk of heart disease, diabetes, certain cancers and other health problems."[11] Thus, "[t]he Dietary Guidelines for Americans recommends that at least half of all the grains you eat are whole grains." *Id.*

21.     A major health benefit of whole grain is its fiber content: "[d]ietary fiber . . . help[s] to maintain a healthy weight and lower[s] your risk of diabetes, heart disease and some types of cancer." *Id.*

**E.   The labeling of the Product conveys to reasonable consumers that a main ingredient is whole wheat flour, a message that is false.**

22.     As described above, stoneground wheat flour is a whole wheat flour. In the survey cited above, consumers were asked to select the Product's three main ingredients, with "whole wheat flour" being one of the selections in addition to the ingredients stated in Defendant's

---

[9] https://www.foodnavigator-usa.com/Article/2021/07/29/Whole-grains-consumption-on-the-rise-reports-Oldways-Whole-Grains-Council#.
[10] https://wholegrainscouncil.org/definition-whole-grain.
[11] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/whole-grains/art-20047826.

ingredients list. Nearly two-thirds of respondents (64.8%) selected "whole wheat flour" as one of the three main ingredients, the highest percentage for any of the ingredients listed, and 78.1% of them indicated this factor would make them more likely to purchase the Product.

**F.** **Defendant's labeling is false, deceptive, and misleading and causes economic harm to consumers**

23.     As set forth above, Defendant's labeling of the Product is designed to – and does - deceive, mislead, and defraud consumers.

24.     Defendant's false, deceptive, and misleading labeling of the Product has enabled Defendant to sell more Products than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers. As has been observed, "for many big companies, stone-ground is just a marketing phrase."[12] This appears true of Defendant.

25.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

   a.     Paid a sum of money for the Product, which was not what Defendant represented;

   b.     Paid a premium price for the Product, which was not what Defendant represented;

   c.     Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant represented;

   d.     Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented;

   e.     Could not be used for the purpose for which they were purchased; and

   f.     Were of a different quality than what Defendant promised.

---

[12] http://usatoday30.usatoday.com/news/health/2006-03-13-stone-ground-flour_x.htm *See also* https://flour.com/whole-wheat-fact-sheet/ (noting "stoneground" is a term "often used for marketing and promotional advantages").

26.     The Product costs more than similar products that are not unlawfully labeled and, conversely, the Product would have cost less if labeled accurately.

27.     Because of Defendant's false, deceptive, and misleading labeling, the Product is worth less than what Plaintiff and class members paid to purchase it.

28.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Product they purchased, and/or Plaintiff and the Class members would not have been willing to purchase the Product at all.

29.     Plaintiff and the Class members paid for a Product that contained stone ground wheat flour and/or whole wheat flour, but received Products that contain either. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

30.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Product over the cost of competitive products not bearing the label and/or containing stone ground and/or whole wheat flour.

31.     Plaintiff and the Class members all paid money for the Product. However, Plaintiff and the Class members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and proposed classes. The Class is defined as follows:

> All consumers who purchased the Product within New York within six years of the filing of this Complaint. ("Class")

33.     There are likely tens of thousands of class members in the class.  The class is sufficiently numerous such that joinder is impracticable.

34.     There are issues of law and fact common to each class, which common issues predominate over any issues specific to individual class members. The principal common issues are: whether the Product has been sold to consumers with the alleged labeling; whether Defendant's conduct constitutes the violations of law alleged herein; whether Defendant acted willfully, recklessly, negligently, or with gross negligence in committing the violations of law alleged herein; whether Plaintiff and class members are entitled to the relief requested. All class members were subjected to the same unlawful conduct, as they all saw the same labeling of the Product and all purchased the Product.

35.     Plaintiff's claims are typical of the claims of class members. Plaintiff and all class members purchased food items that, for all intents and purposes, were identically labeled so as to mislead, deceive, and defraud consumers.  All claims are based on the same legal theories, and all arise from the same course of conduct.

36.     Plaintiff will adequately and fairly protect the interests of all class members.  Plaintiff is committed to a vigorous and successful prosecution of this action, is familiar with the legal and factual issues involved, and has retained counsel experienced in the litigation of false labeling and false

advertising cases, including cases making claims similar to those asserted here. Neither Plaintiff nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by any individual class member is likely not substantial, hence the expense and burden of individual litigation would be economically unfeasible; and (b) the prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications that could establish conflicting standards of conduct for Defendant; and (c) there will be no unusual or extraordinary management difficulties in administering this case as a class action.

38.     Defendant has acted on grounds generally applicable to the class with respect to the matters alleged herein, thereby making the relief sought appropriate with respect to the class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and Other Class Members)**

39.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

40.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

41.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

42.

43.     Defendant misleadingly, inaccurately, and deceptively represents the Product to consumers.

44.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase and/or pay a premium for Defendant's Product and purchase the Product when they otherwise would not have.

45.     Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

46.     Plaintiff and other Class Members have been injured inasmuch as they paid a premium for services. Accordingly, Plaintiff and other Class Members paid more than what they bargained or received.

47.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other members of the Class have been damaged thereby.

48.     As a result of Defendants' recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit of Product purchased.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Other Class Members)**

49.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

50.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

51.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

52.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as it misrepresents that main ingredient of the Product as being stoneground whole wheat flour.

53.     Plaintiff and other Class Members have been injured inasmuch as they relied upon the labeling and paid a premium for Products which, contrary to Defendant's representations, were false and deceptive. Accordingly, Plaintiff and other Class Members paid more than what they bargained or received.

54.     Defendant's labeling induced the Plaintiff and Class Members to buy Defendant's Product.

55.     Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

56.     Defendant made the material misrepresentations described in this Complaint on the packaging of the Product.

57.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

58.     As a result of Defendant's recurring, acts and practices in violation of GBL § 350, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs as well as statutory damages of $500 per Product purchased.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and Other Class Members)

59.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

60.     Plaintiff pleads this claim in the alternative.

61.     As a result of Defendant's deceptive and misleading labeling, advertising, marketing, and sales of the Product, Defendant was enriched, at the expense of Plaintiff and the other Class members through the payment of the purchase price for Defendant's Product.

**62.**     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other members in light of the fact that the Products purchased by Plaintiff and the other Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class request that this Honorable Court:

(i)    enter an order certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(3), as set forth above;

(ii)    enter an order declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(iii)    issue judgment declaring that Defendant has committed the violations of law alleged herein;

(iv)    issue judgment awarding statutory damages in the maximum amount for which the law provides;

(v)    issue judgment awarding monetary damages, including but not limited to any compensatory, incidental, statutory or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

(vi)    issue judgment providing for any and all equitable monetary relief the Court deems appropriate;

(vii)    issue judgment awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

(viii)    issue judgment awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

(ix)    issue judgment awarding pre- and post-judgment interest to the extent the law allows; and

(x)    ordering such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests jury trial on all claims so triable.

Date: December 17, 2021      Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*


**REESE LLP**
Charles D. Moore (to be admitted to S.D.N.Y. bar)
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Fax: 212-253-4272
Email: *cmoore@reesellp.com*

**QUAT LAW OFFICES**
Kenneth D. Quat (to be admitted *pro hac vice*)
373 Winch Street
Framingham, Massachusetts 01701
Telephone: (508) 872-1261
Email: *ken@quatlaw.com*

*Attorneys for Plaintiff and the Proposed Class*