### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

WILLIAM RANDOLPH,
individually and on behalf of a class of
similarly situated persons,

                     Plaintiff,

          v.

MONDELEZ INTERNATIONAL, INC.,

                     Defendant.

Case No. 1:21-cv-10858 (JSR)

### Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

PLAINTIFF'S AMENDMENTS TO THE COMPLAINT: A NON-ISSUE ............................... 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.   The Complaint is Sufficeiently Pled. .................................................................... 5

        A.   The holdings in *Mantikas*, *Campbell*, and *Valcarcel* preclude dismissal. ...................... 5

        B.   That "Stoneground Wheat Thins" May Be a Brand Name Matters Not. ......................... 9

        C.   Plaintiff's Allegations are Plausible. ................................................................. 11

            1.   Defendant's Arguments Run Contrary to Case Law ................................... 11

            2.   Defendant Relies on Inadmissible Evidence and Its Own Conjecture to    Conclude What a Reasonable Consumer May Think ................................... 12

    II.   Defendant's Standing Argument Likewise Fails ................................................. 13

    III.  Plaintiff's Unjust Enrichement Claim is Allowed as Non-Duplicative or As Pled in the Alternative under Federal Civile Procedure Rule 8 ........................................ 14

        A.   The Unjust Enrichment Claim is Not Duplicative ...................................... 14

        B.   Plaintiff's Unjust Enrichment Claim is Also Allowed Under Federal Civil Procedure Rule 8 ................................................................................ 16

    IV.  Plaintiff's Claims are Not Partially Time-Barred ............................................. 16

    V.   Rule 15 Mandates that Leave to Replead Should be Given Freely ................... 18

CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010).......................................... 9

*Acquard v. Big Heart Pet Brands, Inc.*,
No. 19-CV-50-JLS, 2020 WL 12904361 (W.D.N.Y. Nov. 30, 2020)................................ 14, 15

*Arias v. United States*,
No. 13 CIV. 8542 HBP, 2014 WL 5004409 (S.D.N.Y. Sept. 29, 2014) ................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 l.Ed.2d 868 (2009) ............................................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)......................................................... 5

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021) ............................................................................. passim

*Chang v. Fage USA Dairy Indus., Inc.*,
No. 14-CV-3826 (MKB), 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) .................. 15, 17, 18

*Cooper v. Anheuser-Busch, LLC*,
No. 20-CV-7451 (KMK), 2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021).................................... 9

*Cty. of Nassau v. Expedia, Inc.*,
992 N.Y.S.2d 293 (N.Y. App. Div. 2014) ............................................................................... 14

Davis v. Hain Celestial Grp., Inc.,
297 F. Supp. 3d 327, 336-D.N.Y. 2018)................................................................................... 8

*Foman v. Davis*,
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).............................................................. 18

*Giunta v. Dingman*,
893 F.3d 73 (2d Cir. 2018) ...................................................................................................... 4

*Hutchinson v. Univ. of Saint Joseph*,
No. 3:21-CV-325(RNC), 2022 WL 19339 (D. Conn. Jan. 3, 2022)........................................ 17

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ..................................................................................... 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................................................. 18

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020) ........................................................................... 4, 5, 12

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ................................................................... passim

*Matana v. Merkin*,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013) ............................................................. 17, 18

*McCracken v. Verisma Sys., Inc.*,
   No. 6:14-cv-06248-MAT, 2017 WL 2080279 (W.D.N.Y. May 15, 2017) ............................ 14

*NovaFund Advisors, LLC v. Capitala Grp., LLC*,
   No. 3:18-CV-1023 (MPS), 2021 WL 3568892 (D. Conn. Aug. 11, 2021) ............................ 16

*Nuss v. Sabad*,
   No. 7:10-cv-0279-LEK-TWD, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) ........................ 14

*Rooney v. Cumberland Packing Corp.*,
   No. 12-CV-0033-H DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ................................ 8

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-CV-3826 MKB, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................ 11

*Team Kasa, LLC v. Humphrey*,
   No. CV171074JSAKT, 2018 WL 1867117 (E.D.N.Y. Jan. 24, 2018) .................................... 13

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
   No. 14-CV-9992 SAS, 2015 WL 4190746 (S.D.N.Y. July 10, 2015) .................................... 16

*Valcarcel v. Ahold U.S.A., Inc.*,
   No. 21-CV-07821 (JSR), 2021 WL 6106209 (S.D.N.Y. Dec. 22, 2021) ........................ passim

*Warner v. StarKist Co.*,
   No. 1:18-cv-406-GLS-ATB, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) .......................... 14

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) ............................................................................. 14, 18

**Statutes**

New York General Business Law ("GBL") §§ 349 and 350................................................... passim

**Rules**

Federal Rule of Evidence 803............................................................................................ 13
Federal Rule of Evidence 1002.......................................................................................... 13
Federal Rule of Civil Procedure 8 ........................................................................... 4, 14, 16
Federal Rule of Civil Procedure 9 ........................................................................................ 4
Federal Rule of Civil Procedure 15 .................................................................................... 18

**Regulations**

21 C.F.R. § 101.18(b) .......................................................................................................... 9

Plaintiff William Randolph respectfully submits this memorandum of law in opposition to Defendant Mondelez Global LLC's Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Motion").

For the reasons set forth below, the Court should deny the Motion in its entirety.

## INTRODUCTION

The present consumer class action asserts that Defendant's "Stoned Wheat Thins" cracker products are deceptively labeled. Plaintiff seeks to represent a class of New York consumers who have brought claims due to Defendant's violation of New York General Business Law ("GBL") §§ 349 and 350, as well as for unjust enrichment.

Although Plaintiff's claims are consistent with a line of well-reasoned, established cases allowing similar claims to proceed, Defendant has nonetheless moved to dismiss, arguing that:1) as a matter of law reasonable consumers could not be deceived by the label; 2) Plaintiff did not suffer a cognizable injury and therefore lacks standing because the label is not deceptive as a matter of law; 3) the unjust enrichment claim is duplicative; and 4) the claims are partially time-barred.

Defendant's motion brings to mind two adages – first, that there is nothing new under the sun, and second, the definition of insanity is doing the same thing over and over again and expecting a different result. This case is materially indistinguishable from *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), and *Valcarcel v. Ahold U.S.A., Inc.*, No. 21-CV-07821 (JSR), 2021 WL 6106209 (S.D.N.Y. Dec. 22, 2021) (J. Rakoff), where on substantially similar facts, courts rejected the same arguments Defendant makes here. Yet Defendant seems to believe this time will be different. As demonstrated herein, Defendant is misguided.

## FACTUAL BACKGROUND

As seen below, the Product name "Stoned Wheat Thins" is prominently displayed on the front of the package in large, highly-contrasting print.   Amended Complaint (EC No. 16) (hereafter "Am. Compl.") at ¶ 13.



Upon viewing the prominent product name, reasonable consumers believe the Product's main ingredient is stoneground whole wheat flour. *Id.*. ¶ 16. But unfortunately for consumers, the main ingredient is unbleached enriched flour, which is considered inferior to stoneground whole wheat flour. *Id.* ¶ 18; *see also* Declaration of Carlen Sens, Ex. 1, ECF No. 22-1. Based on this misrepresentation, Plaintiff and the class members paid a premium price for the products. *Id.* ¶¶ 25 -30.

## PLAINTIFF'S AMENDMENTS TO THE COMPLAINT: A NON-ISSUE

Perhaps sensing the weakness of its legal arguments, Defendant attempts to sow confusion about the nature of Plaintiff's claims. This should be seen for the smokescreen that it is.

Citing two minor editorial oversights in the initial complaint, Defendant drastically overstates the changes there were made. It argues that Plaintiff's complaint is not about whether

stoneground wheat flour (which by definition is whole wheat flour) is *the* main ingredient in the Product, but rather that it is *a* main ingredient.

But Defendant's argument makes a mountain out of a mole hill. The original complaint alleged that Plaintiff was deceived because Defendant's label conveys the false and misleading message that stoneground wheat flour is *the* Product's main ingredient. For example, the initial paragraph of the original complaint stated: "Defendant's branding and labeling of the Product conveys a message to consumers that is deceptive and misleading in that it conveys that *the* main ingredient of the Product of [sic] stoneground whole wheat flour. This is untrue as *the* main ingredient is, in fact, inferior, unbleached enriched flour (a.k.a. "white flour")." Complaint (ECF No. 1) ("Complaint)" at ¶ 1. This core allegation is then repeated in the very next paragraph: "Plaintiff…bought [the Product] . . . believing that *the* main ingredient of the Product was stoneground whole wheat flour. Had Plaintiff known the truth that *the* main ingredient was not stoneground wheat flour (but rather, unbleached enriched flour, a.k.a. "white flour") he would not have bought the Product." *Id.* ¶ 1 (emphasis added). The Complaint went on to state: "Unfortunately for consumers, *the* main ingredients [sic] in the Products is not stoneground whole wheat flour." *Id.* ¶ 18 (emphasis added). Finally, it states "Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as it mispresents *the* main ingredient of the Product as being stoneground whole wheat flour." *Id.* ¶ 52 (emphasis added).

Indeed, there is only one sentence in the original complaint that describes stoneground wheat flour as *a* main ingredient of the Product, and that is the heading of Section C. Similarly, the only sentence in the original complaint that describes whole wheat flour as *a* main ingredient is the heading Section E. In the Amended Complaint, Plaintiff merely brought these headings into alignment with the factual allegations.

Contrary to Defendant's hyperbole, Plaintiff did not drastically rewrite his theory in the amendment. The claims in both the original and amended complaints are clear and identical: Defendant's label deceived Plaintiff and other consumers by misrepresenting that the Product's main ingredient is stoneground whole wheat flour, which is fact is not true.

## LEGAL STANDARD

It is well-established that "[c]laims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Campbell*, 516 F. Supp. 3d at 381 (citation omitted). Thus, to survive a Rule 12(b)(6) motion the complaint need only set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When these statements are challenged "[o]n a 12(b)(6) motion to dismiss, a court must 'accept [ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiffs' favor.'" *Valcarcel*, 2021 WL 6106209, at *3 (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)) (modifications in original). As this Court has recognized: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Valcarcel*, 2021 WL 6106209, at *3 (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).

It is equally well-established that "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Valcarcel*, 2021 WL 6106209, at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 l.Ed.2d 868 (2009)). Indeed, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Lynch*, 952 F.3d at 75 (citation omitted). Consequently,

"[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

As the United States Supreme Court has recognized, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)) Thus, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recover is very remote and unlikely.'" *Valcarcel*, 2021 WL 6106209, at *3 (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I.  THE COMPLAINT IS SUFFICIENTLY PLED.

#### A.  The holdings in *Mantikas*, *Campbell*, and *Valcarcel* preclude dismissal.

The allegation that the "Stoned Wheat Thins" label led reasonable consumers to believe the main ingredient was stoneground whole wheat flour when the main ingredient was  actually enriched flour is not materially different from labeling that courts in this Circuit have found sufficient to support consumer deception claims.

In the Second Circuit case of *Mantikas v. Kellogg Co.*, the plaintiff alleged the statement "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" led reasonable consumers to believe that the grain in Cheez-Its was predominantly whole grain, when, in fact it was enriched white flour. *Mantikas*, 910 F.3d at 634. Similarly, in *Campbell*, the plaintiff alleged the word "Graham" in "Honey Graham Crackers," led reasonable consumers to believe that the crackers contained predominantly whole-grain graham flour, when, in fact it was "enriched flour" or "refined flour." *Campbell*, 516 F. Supp. 3d at 376–78. And, in *Valcarcel*, the plaintiff alleged the word "Graham" in "Naturally Flavored Cinnamon Graham Crackers," led reasonable consumers to believe that graham flour was the predominant ingredient, when in fact it was "enriched wheat flour."

*Valcarcel*, 2021 WL 6106209, at *2.

Here, the statement "Stoned Wheat" is just as prominent as – if not more prominent than -
the labels in these earlier cases. *Compare Mantikas*, 910 F.3d at 634 ("the words "WHOLE
GRAIN' in large print in the center of the front panel of the box"); *Campbell*, 516 F. Supp. 3d at
377 ("Each word is written in large orange letters in the same font type and size."); *Valcarcel*,
2021 WL 6106209, at *2 ("As the image shows, the word 'graham' appears both larger and in a
distinct font from the word 'crackers,' which appears under it"); *with* Am. Compl. ¶¶ 13-16 ("The
Product's name, 'Stoned Wheat Thins' - which is depicted in bold white print against a contrasting
red background. . . .").

Moreover, the phrase "Stoned Wheat" on Defendant's product has the same significance
as the statement "Whole Grain" on boxes of Cheez-Its crackers and the term "Graham" on boxes
of graham crackers. – namely, that the product is made predominantly of "stoned wheat." And
since it is common knowledge (as consumers reasonably believe) that crackers are made
predominantly of flour, "stoned wheat" can reasonably mean "stoneground wheat flour."  *See
Mantikas*, 910 F.3d at 683 ("reasonable consumers are likely to understand that crackers are
typically made predominantly of grain. They look to the bold assertions on the packaging to discern
the *type* of grain") (emphasis in original).

Defendant employs the same playbook used unsuccessfully by the defendants in these
earlier cases. In *Campbell,* the defendant argued that "[t]he phrase 'graham cracker,' . . . is not an
ingredient statement and does not suggest that 365 Graham Crackers are made with a specific type
of flour or a particular portion of whole grain flour as compared with other ingredients."
Declaration of Charles D. Moore, Ex. 1, Motion to Dismiss in *Campbell* ("*Campbell* Motion"),
ECF No. 23, at 5. And in *Valcarcel,* the defendant contended that "[r]easonable consumers do not

understand 'graham crackers' to mean that a specific type of flour is predominant in the food." Moore Decl., Ex. 2, Motion to Dismiss in *Valcarcel* ("*Valcarcel* Motion"), ECF No. 16, at 10. Defendant makes a nearly identical argument here, stating "[s]imply put, no reasonable consumer would interpret the names 'Stoned Wheat Thins' as a representation that 'the main ingredient' in the crackers is 'whole wheat,' . . . ." Motion at 9.

All the defendants, likewise, emphasized that the phrase "whole grain" or "whole wheat" does not appear on the packaging. *Compare Campbell* Motion at 8 ( "[h]ere, in contrast [to *Mantikas*], the packaging and labeling of 365 Graham Cracker does not state the crackers are 'made with whole grain' or 'made with graham flour.'"); *Valcarcel* Motion at 12 ("Valcarcel's interpretation of 'graham crackers' as meaning 'a predominant amount of whole grain graham flour' is especially unreasonable as applied to Defendant's Product, because the Product packaging ***nowhere*** mentions 'graham flour' or 'whole grain' (other than the undisputedly accurate ingredient list)") (emphasis in original); *with* Motion at 7 ("The product nowhere claims to contain 'whole wheat'").

And Defendant, again echoing the earlier defendants, points to dictionary definitions to support its argument. *Compare Campbell* Motion at 6 (citing the dictionary definition of "graham cracker"); *Valcarcel* Motion at 10 n.5 (citing the dictionary definition of "graham cracker" as being a treat not flour); *with* Motion at 7-8 (citing the dictionary definition of "stone-ground").

Finally, Defendant cites much of the same outdated and inapposite cases relied on by defendants in the earlier cases. *Compare Campbell* Motion at 6 (citing *Nashville Syrup Co. v. Coca Cola Co.*, 215 F.527, 531 (6th Cir. 1914); *Valcarcel* Motion at 11 (citing the same opinion for the same proposition); *with* Motion at 16 (citing the same opinion for the same proposition); *with* Motion at 16 (citing the same opinion for the same proposition).

But this pattern continues throughout Defendant's Motion. *Compare Valcarcel* Motion at 11 (citing *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H DHB, 2012 WL 1512106, at \*4 (S.D. Cal. Apr. 16, 2012) to support the argument that it is unreasonable as a matter of law to adopt the plaintiff's interpretation of the label); *with* Motion at 10 (citing *Rooney* for the same proposition); *also compare Campbell* Motion at 8 (citing Davis v. Hain Celestial Grp., Inc., 297 F. Supp. 3d 327, 336-37 (E.D.N.Y. 2018) for proposition that if element is ambiguous it can be clarified elsewhere); *with* Motion at 11 (citing *Davis* for the same proposition); *also compare Valcarcel* Motion at 11 (analogizing to a "froot loops" case as example of unreasonable interpretation of a label); *with* Motion at 10 (analogizing a different "froot loops" case for same proposition).

Ultimately, however, the courts in *Mantikas*, *Campbell*, and *Valcarcel* all understood that these arguments did not preclude, as a matter of law, a finding that the labeling could deceive reasonable consumers:

> Plaintiffs have adequately alleged such factual content. They allege that the conspicuous "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" claims on the front and center of the Defendant's packaging communicates to the reasonable consumers the false message that the grain content of the crackers is exclusively or at least predominantly whole grain; that this false message is not dispelled by the information that each cracker is "MADE WITH 8G [OR 5G] OF WHOLE GRAIN PER SERVING," which fails to communicate that the quantity of enriched white flour exceeds the quantity of whole grain; and that the misleading quality of the message is not effectively cured by implicitly disclosing the predominance of enriched white flour in small print on an ingredients list on the side of the package. These are sufficient factual allegations to state a claim that Defendant's conduct was, plausibly, deceptive. A reasonable consumer would likely be deceived by the labeling alleged in the complaint. The district court's conclusion to the contrary was error.

*Mantikas*, 910 F.3d at 638–39;

> In the context of this motion, the Court cannot conclude that Plaintiff failed to plead that a reasonable consumer is likely to be misled by the use of "graham" on the packaging for this product. It is not implausible that consumers would understand the words on the box to say what they mean. Evidence, such as a consumer survey, not merely judicial introspection, is needed to determine what consumers understand the

phrase to mean in the context of this particular product and its packaging.

*Campbell*, 516 F. Supp. 3d at 383

> At the motion to dismiss stage, "the Court may not resolve questions regarding "background knowledge, experience, and understanding of reasonable consumers' as a matter of law" [citations omitted]. It may well be that "survey, expert testimony, and other [competent] evidence" ultimately proves Ahold's position to be the correct one, [citation omitted], but such a factual inquiry and inference is improper given the present procedural posture.

*Valcarcel*, 2021 WL 6106209, at *7.

The same result is compelled here, and Defendant's "reasonable consumer" argument should be rejected.

### B. That "Stoneground Wheat Thins" May Be a Brand Name Matters Not.

Defendant attempts to distinguish *Mantikas*, *Campbell*, and *Valcarcel* on the ground that "Stoned Wheat Thins" is a trademarked brand name, unlike the statements challenged in these other cases. *See* Motion at 15 ("None involved a plaintiff divining a misrepresentation exclusively from the product's trademarked brand name"). Defendant is grasping at straws.

Applicable federal regulations and relevant case law make clear that a deceptiveness analysis under New York's consumer protection statutes is not affected by whether a misrepresentation is, or is part of, a brand name. *See* 21 C.F.R. § 101.18(b) (a food product can be misleading if the product contains two or more ingredients, but the name only includes or suggests one or more but not all such ingredients); *Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451 (KMK), 2021 WL 3501203, at *10 (S.D.N.Y. Aug. 9, 2021) ("Ritas" brand name could be misleading and therefore actionable under state law); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.* 8 F. Supp. 3d 467, 475 (S.D.N.Y. 2014) ("Active Naturals" brand name could be misleading and therefore actionable under GBL § 349); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *13 (E.D.N.Y. July 21, 2010) (brand name

"vitaminwater" could be misleading). Collectively, this authority makes clear that there is no carveout for brand names under GBL § 349 and 350.

Defendant also seeks to distance itself from the other defendants, stating that in those cases "the court relied on a striking visual emphasis that the front labels placed on a particular phrase," explaining that the terms "Stoned" and "Wheat" are not set off in any visually striking way. *Id.* at 16-17. This is specious; the name "Stoned Wheat Thins" is centered on the package front, is significantly larger than surrounding text, and is further highlighted by color contrast and font. Am. Compl. ¶ 16; *see* ¶¶ 13-15 ("Red Oval Farms" in significantly smaller font); ¶ 14 ("snack crackers" in significantly smaller font).

And the fact that the words "stoned" and "wheat" are depicted no differently than the word "thins" is equally insignificant: "thins" does not correct any misperception, nor does it obscure the two preceding words, which are equally prominent. Indeed, in *Mantikas* the name "Cheez-It" was significantly larger than the phrase at issue. *See Mantikas*, 910 F.3d at 635 (see image). In *Campbell*, the phrase "honey" was equally as large and in the same font as "graham," and while both statements were at issue, only the "graham" statement pertained to wheat. The court did not consider it significant that "honey" was of equal size and was printed in an identical font. *Campbell,* 516 F. Supp. 3d at 377, 382.

It is noteworthy, and perhaps not surprising, that Defendant has not pointed to any persuasive authority to distinguish the earlier cases. A Sixth Circuit opinion from 1914, and an opinion from the Southern District of California from 2012—neither of which addressed GBL claims— do not override the Second Circuit Court of Appeals' 2018 holding in *Mantikas* nor the 2021 opinions from this district, and this Court.

### C.  **Plaintiff's Allegations are Plausible.**

But even taking up the sustenance of Defendant's argument, it simply does not hold water. The primary thrust of Defendant's position is that no reasonable consumer could read the Stoned Wheat Thins statement and believe the main ingredient was stone ground whole wheat. *See* Motion at 6-7. It goes so far as to claim Plaintiff failed to "plead *any facts* showing that a reasonable consumer would be similarly deceived." *Id.* at 7. It then relies on a series of external documents to draw the contrary conclusion. *See* Motion at 7-9. But this argument is both legally and factually flawed, and fatally so.

### 1.  *Defendant's Arguments Run Contrary to Case Law*

First, *Campbell* and *Valcarcel* make abundantly clear that this is simply not a decision that can be made at this stage of the litigation. *See Campbell*, 516 F. Supp. 3d at 383; *Valcarcel*, 2021 WL 6106209, at *7. In fact, the *Campbell* court was explicit in its wariness of the claims. *Campbell*, 516 F. Supp. 3d at 383. But it was equally aware that "'at least in some cases, "a federal trial, judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled.'" *Id.* at 384 (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)).

These opinions make clear that the very thing Defendant seeks—determination of a reasonable consumer's understanding as a matter of law—is something the Court should not do at this stage.[1]

---

[1]  Defendant criticizes Plaintiff's survey, claiming that "[t]his survey provides zero support for Plaintiff's newfound theory that reasonable consumer believe such flour is the main ingredient in the product."  Motion at 13. While Plaintiff completely disagrees with Defendant, Plaintiff is not relying on the survey for purposes of defeating Defendant's Motion.  In both *Campbell* and *Valcarcel,* this kind of survey evidence was not part of the plaintiffs' allegations, but the courts

### 2. *Defendant Relies on Inadmissible Evidence and Its Own Conjecture to Conclude What a Reasonable Consumer May Think*

Rather than engage with the evidence and allegations, Defendant cobbles together its own self-serving view of what a reasonable consumer's understanding of the label based largely on what it is ***not*** required to do under the food regulations. For example, Defendant states: "The FDA's standard of identity for 'whole wheat flour' does not require any particular method of milling. . . ." Motion at 7. But simply because the FDA does not require whole wheat flour to be stone-ground does not mean that a reasonable consumer cannot perceive crackers prominently labeled "Stoned Wheat" as being made predominantly with stoneground wheat flour or, simply, whole wheat flour. Defendant then goes on to opine that "stoned" does not mean "stoneground" and "Stoned Wheat" is not the same thing as "stoneground wheat flour." But these are plausible questions of fact that a jury is to decide, not Defendant.  *See Lynch*, 952 F.3d at 75 ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion").

Proceeding in the same conclusory fashion, Defendant claims that the "Stoned Wheat Thins" is simply a brand name that does not pertain to the Product's ingredients or refer to a type of food or production technique. Motion at 10. But again, Plaintiff's well-pleaded allegations are to the contrary. And, as noted, a similar argument was rejected in *Campbell*. *Compare Campbell* Motion at 5-6 (arguing "[t]he phrase 'graham cracker,' however, is not an ingredient statement and does not suggest that 365 Graham Crackers are made with a specific type of flour or a particular proportion of whole grain flour as compared to other ingredients"); *with Campbell*, 516 F. Supp. 3d at 382 ("A reasonable consumer can view each of those items as a description of the

---

nonetheless denied motions to dismiss. *See Campbell*, 516 F. Supp. 3d at 385; *Valcarcel*, 2021 WL 6106209, at *7.

ingredients in the crackers described below each of those prominent terms").

Perhaps most revealing is Defendant's attempt to turn its motion to dismiss into a fact-finding exercise by claiming that the "cracked wheat" listed as the Product's second ingredient is stone-milled. *See* Motion at 14. Regardless, however, for purposes of the instant motion this is simply an unsupported statement of counsel that cannot be considered.[2] *See Arias v. United States*, No. 13 CIV. 8542 HBP, 2014 WL 5004409, at *10 (S.D.N.Y. Sept. 29, 2014) ("[u]supported statements of counsel are insufficient to generate issue of fact"). But, even if *arguendo* any "cracked wheat" present in the Product is stone-milled and/or whole wheat, such a fact would not undermine Plaintiff's allegation that the label is deceptive because that stoneground whole wheat flour is not the predominant ingredient. *See Mantikas*, 910 F.3d at 634–35 (whole wheat flour was the second and third ingredient); *Valcarcel*, 2021 WL 6106209, at *2 (graham flour was the second ingredient).

In sum, Plaintiff has plausibly alleged – consistent with the allegations found plausible in *Mantikas*, *Campbell*, and *Valcarcel* – that the prominent name "Stoned Wheat Thins" conveys that the Product is made predominantly of stoneground whole wheat flour. The same result should lie.

## II.    **DEFENDANT'S STANDING ARGUMENT LIKEWISE FAILS**

Piggybacking off its 12(b)(6) argument, Defendant claims that because the "Stoned Wheat Thins" statement was not misleading, Plaintiff lacks an injury for standing. *See* Motion at 17-18.

---

[2] Defendant made a sly attempt to back-in a similar statement through the declaration of its attorney Ashley Simonsen. Specifically, she declares that on February 8, 2022, she sent a letter to Plaintiff's counsel stating as such. *See* Declaration of Ashely M. Simonsen, ¶ 2. Notably, she only declares she sent the letter stating this, not that this is in fact true or that she has personal knowledge of the business records—only knowledge of the letter. *See Team Kasa, LLC v. Humphrey*, No. CV171074JSAKT, 2018 WL 1867117, at *5 (E.D.N.Y. Jan. 24, 2018) (rejecting affidavit of counsel on facts to which they did not have personal knowledge). Nor could she, as she would not be a proper custodian or qualified witness to make such a declaration. *See* Fed. R. Evid. 803(6). Nor were the records provided in violation of the best evidence rule. *See* Fed. R. Evid. 1002.

But for the same reasons stated above, the fundamental premise of this argument does not hold

water, and for this reason as well, Defendant's motion should be denied.

## III.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS ALLOWED AS NON-DUPLICATIVE OR AS PLED IN THE ALTERNATIVE UNDER FEDERAL CIVIL PROCEDURE RULE 8

### A.    The Unjust Enrichment Claim is Not Duplicative

Defendant argues that Plaintiff's unjust enrichment claim must be dismissed as duplicative

of his GBL §§ 349 and 350 claims.  Motion at 18-19.  Defendant's position is wrong. Plaintiff's

unjust enrichment claim ***is not*** duplicative of the GBL §§ 349 and 350 claims. As explained in

*Acquard v. Big Heart Pet Brands, Inc.*, No. 19-CV-50-JLS, 2020 WL 12904361 (W.D.N.Y. Nov.

30, 2020):

> Plaintiffs' unjust enrichment claim is not duplicative, because Plaintiffs' other claims – under New York General Business Law…– require proof of an element that is distinct from what is required to prove unjust enrichment. *Nuss v. Sabad*, No. 7:10-cv-0279-LEK-TWD, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) (holding that an unjust enrichment claim is not duplicative if a "reasonable trier of fact could find unjust enrichment ... without establishing all the elements for one of [Plaintiffs'] claims sounding in law"). For example, to prevail under New York General Business Law § 349, a plaintiff must show '[p]roof that [a] defendant's acts are directed to consumers,'" while a claim for unjust enrichment does not require such a showing. *McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-06248-MAT, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017); *Cty. of Nassau v. Expedia, Inc.*, 992 N.Y.S.2d 293, 296 (N.Y. App. Div. 2014) (setting forth the elements of unjust enrichment as: (1) enrichment of the defendant; (2) at the plaintiff's expense; (3) the retention of which by the defendant is against equity and good conscience). Thus, "a reasonable trier of fact could find the elements [of] unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim." *Id.; see also Warner v. StarKist Co.*, No. 1:18-cv-406-GLS-ATB, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (observing that "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350"). Furthermore, "even if the jury determines that the [Plaintiffs] did not rely on the [Defendant's] allegedly fraudulent statements, the Court could still find that the [Defendant] received a benefit ... that aught [sic] to in 'equity and good conscience' be turned over to [Plaintiffs]." *Nuss*, 2016 WL 4098606, at *11.

*Acquard*, 2020 WL 12904361, at *7.

In *Acquard*, just as here, deceptive labeling claims were pled both for violation of GBL §§ 349/350 and for unjust enrichment.

In addition to the differences between GBL claims and unjust enrichment discussed above by the court in *Acquard*, the measure of recoveries for a violation of GBL §§ 349/350 and for unjust enrichment are significantly different. Plaintiff here seeks ***statutory damages*** of $50 for Defendant's violation of GBL §349 and $500 for its violation of GBL §350.

In sharp contrast, with respect to his unjust enrichment claim, however, Plaintiff seeks ***restitution***. *See* Amended Complaint, ¶ 61 ("it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products."). It goes without saying that restitution differs from an award of statutory damages, as it is based upon the price premium that consumers paid for products. *See e.g. Chang v. Fage USA Dairy Indus., Inc.*, No. 14-CV-3826 (MKB), 2016 WL 5415678, at *10 (E.D.N.Y. Sept. 28, 2016) ("Thus, where a monetary award seeks to restore a plaintiff's property that the defendant obtained using unlawful means, even where that property is money, it is "a restitutionary remedy" and "not one for payment of damages…. Here, Plaintiffs seek to restore the money Defendant acquired using allegedly unlawful means, and thus seek a "restitutionary" remedy. While such a remedy may overlap with a damages award… they are distinct remedies.").

For these reasons, Defendant's reliance on *Valcarcel* is misplaced, because there the plaintiff did not contest the duplication argument. *Valcarcel*, 2021 WL 6106209, at *10 ("Valcarcel has offered no explanation of how its unjust enrichment claim differs from its other causes of action, which seek relief from the same conduct."). Here, by contrast, Plaintiff has offered a sound explanation. *Supra* citing *Acquard*, 2020 WL 12904361, at *7. Accordingly, Defendant's motion to dismiss the unjust enrichment claim must be denied.

**B. Plaintiff's Unjust Enrichment Claim is Also Allowed Under Federal Civil Procedure Rule 8**

Plaintiff's claim for unjust enrichment is pled in the alternative under Federal Civil Procedure Rule 8. Courts repeatedly have recognized "[u]njust enrichment can be pled…in the alternative under Rule 8." *NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2021 WL 3568892, at *13 (D. Conn. Aug. 11, 2021); *see also Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, No. 14-CV-9992 SAS, 2015 WL 4190746, at *5 (S.D.N.Y. July 10, 2015) (rejecting defendants' argument that plaintiff's unjust enrichment claim should be dismissed because it is duplicative, because Rule 8(a)(3) "expressly permit[s] plaintiffs to plead in the alternative, and the law is well settled in this regard"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411, n.11 (S.D.N.Y. 2011) ("The Court rejects Defendants' first argument ... that unjust enrichment is disallowed where an adequate remedy at law exists. This argument is premature because Plaintiffs may plead in the alternative.").

Defendant does not dispute that Plaintiff cannot plead in the alternative under Rule 8. For this reason as well, therefore, Defendant's motion to dismiss Plaintiff's unjust enrichment claim must be denied.

**IV.    PLAINTIFF'S CLAIMS ARE NOT PARTIALLY TIME-BARRED**

The Amended Complaint asserts a class period commencing December 17, 2015, which is six years prior to the filing of the complaint. Defendant asserts that a three year statute of limitations is applicable here and argues that any claims prior to December 17, 2018 are time barred. Motion. at 19.

Defendant reasons that a three-year limitations period applies "to claims under GBL §§ 349 and 350 and to unjust enrichment claims (like Plaintiff's) that seek monetary damages." *Id.* Defendant is wrong because Plaintiff is not seeking damages under an unjust enrichment theory,

but instead is seeking the equitable remedy of restitution. *See* Amended Complaint, ¶ 61 ("it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products."); *see also Hutchinson v. Univ. of Saint Joseph*, No. 3:21-CV-325(RNC), 2022 WL 19339, at *4 (D. Conn. Jan. 3, 2022) ("a court may still award equitable relief in the form of restitution"). As explained by the court in *Chang*:

> [W]here a monetary award seeks to restore a plaintiff's property that the defendant obtained using unlawful means, even where that property is money, it is a restitutionary remedy and not one for payment of damages…. Here, Plaintiffs seek to restore the money Defendant acquired using allegedly unlawful means, and thus seek a "restitutionary" remedy. While such a remedy may overlap with a damages award… they are distinct remedies.

*Chang*, 2016 WL 5415678, at *10.

It is uncontested that equitable claims for unjust enrichment are subject to a six-year statute of limitations, not three. *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) ("The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages."). Moreover, the fact that an unjust enrichment claim seeks relief in the form of money does not change the fact it is still an equitable remedy. *Chang*, 2016 WL 5415678, at *10.

*Matana* is directly on point. There, the plaintiff sought the disgorgement of money through its unjust enrichment claim. The court held that this was a form of equitable relief and therefore subject to a six-year statute of limitations:

> [Plaintiff] KM's claim of unjust enrichment is based on defendants' collection of an annual management fee on KM's investments in Ascot Fund, and seeks disgorgement of those fees. Assuming that the relief KM seeks is properly characterized as an equitable claim for disgorgement, this claim would be timely as to any fees collected on or after March 7, 2007, *i.e.,* six years before the filing of the Complaint.

*Id.* at 494; *see also Chang*, 2016 WL 5415678, at *10.

Accordingly, none of Plaintiff's claims are partially time-barred.

## V.    RULE 15 MANDATES THAT LEAVE TO REPLEAD SHOULD BE GIVEN FREELY

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam)) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.")). Accordingly, if the Court finds that any part of the Amended Complaint is insufficient, Plaintiff respectfully requests that he be allowed to replead to address the insufficiency.

With respect to Defendant's statement that "if the court permits Plaintiff to file a second amended complaint…the court [should] admonish Plaintiff that the pleading be consistent with Plaintiff's original Complaint" (Motion at 20), this request by Defendant is misplaced. As discussed above, Defendant grossly mischaracterized the allegations of the original complaint, as well as the amendment, in an apparent attempt to distract or confuse the Court. Plaintiff is well aware—as undoubtedly Defendant is as well—of his obligations to the Court.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file a Second Amended Complaint.

Date: February 25, 2022                     Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 701-3907214
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email:  *mreese@reesellp.com*

**QUAT LAW OFFICES**
Kenneth D. Quat (*pro hac vice* application pending)
373 Winch Street
Framingham, Massachusetts 01701
Telephone: (508) 872-1261
Email: *ken@quatlaw.com*

*Attorneys for Plaintiff and the Proposed Class*