UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM RANDOLPH, individually and on behalf of a class of similarly situated persons,<br>          Plaintiffs,<br><br>     -v-<br><br>MONDELĒZ GLOBAL LLC,<br>          Defendant. | 21-cv-10858 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

   This is a putative class action alleging New York state law deceptive practices, false advertising, and unlawful enrichment claims concerning the labeling of the snack cracker "Stoned Wheat Thins." Plaintiffs allege that the box misleadingly suggests to consumers that the crackers are made with "stoneground whole wheat," for which consumers are willing to pay a premium, when in fact unbleached enriched white flour milled on steel rollers is the predominant ingredient.

   The Second Circuit held in Mantikas v. Kellogg Co. that a plaintiff states a claim under New York's deceptive practices and false advertising statutes where a food package features the term "whole grain" and "the grain content is [not] entirely or at least predominantly whole grain." 910 F.3d 633, 637 (2d Cir. 2018). Since Mantikas, a line of snack crackers cases has emerged in this district extending that reasoning to packages of "graham crackers" that are predominantly made with white flour, rather than the coarsely ground

1

whole-grain flour recommended by Sylvester Graham as the cornerstone of the American diet. See Valcarcel v. Ahold U.S.A., Inc., 2021 WL 6106209, at *1 (S.D.N.Y. Dec. 22, 2021); see also, e.g., Campbell v. Whole Foods Mkt. Grp. Inc., 516 F.Supp. 3d 370 (S.D.N.Y. 2021).

Plaintiffs say this case is the same, but the Court disagrees. Mantikas has established a useful rule that prevents food companies from confusing consumers into thinking that certain crunchy snacks are healthier than they are. The Court now suggests an endpoint to Mantikas's reasoning: where a package nowhere uses the phrase "whole grain" or any synonym or type thereof, the Court will not infer that the reasonable consumer shopping reasonably would mistake the product for being predominantly whole grain, absent specific allegations to the contrary. And since the amended complaint nowhere makes factual allegations that give rise to a plausible inference that consumers reasonably interpret the phrase "stoned wheat" to mean that the crackers are made with whole wheat, the motion to dismiss of defendant Mondelēz Global LLC is granted (though without prejudice to amendment).

**I.  Factual Background**

The packaging for "Stoned Wheat Thins" snack crackers includes an image of a wheat field below a blue and orange background, which is overlaid with a red oval containing large, white letters reading "STONED WHEAT THINS." First Amended Complaint, ECF 16 (FAC) ¶ 13.[1]

---

[1] There are three varieties of crackers at issue: "Stoned Wheat Thins," "Mini Stoned Wheat Thins," and "Stoned Wheat Thins Low Sodium." FAC ¶¶ 13-15. There is no material difference between the packaging for the three varieties, so the Court will refer throughout this

Below that, in smaller, thin black letters, it reads "WHEAT CRACKERS." Id. The box also features an image of a cracker topped with thin apple slices and cheddar cheese and garnished with an unidentified green herb. Id. Nowhere does the package mention "whole wheat" or the word "stoneground."



Plaintiffs allege that the box leads the reasonable consumer to believe that stone-ground whole wheat flour is the predominant ingredient in the crackers. FAC ¶ 16. In fact, as the ingredients list discloses, the predominant ingredient is "unbleached enriched flour," and the second ingredient is "cracked wheat." See ECF 22-1 (label). William Randolph, the named plaintiff of a putative class, alleges

---

opinion to the original Stoned Wheat Thins box, which is inserted below. The complaint itself has images of the three boxes, but those images do not include the ingredients lists. Id. Mondelez correctly argues that the full labels, provided via a defendant's declaration, are cognizable on a motion to dismiss claims under GBL §§ 349 & 350, because the full packaging is integral to the complaint and incorporated by reference. See ECF 22-1, 22-2, 22-3 (Labels).

that he has purchased Stoned Wheat Thins near his home on the Upper West Side on a bi-monthly basis from the beginning of the class period December 18, 2015 to 2019, "believing that the main ingredient of the Product was stoneground whole wheat flour." FAC ¶ 1.[2]

The complaint alleges that stone ground flour is more nutritious than flour produced on conventional steel roller mills, which expose the flour to high temperatures. FAC ¶¶ 6-10. The complaint further alleges that the market for stone-ground whole wheat has grown in recent years, and that consumers are willing to pay a premium for stone-ground whole wheat products because of perceived health benefits. FAC ¶¶ 11-12. The complaint therefore claims that purchasers of Stoned Wheat Thins received a product that was worth less than what the packaging led them to believe they paid for. FAC ¶¶ 24-31.

The complaint brings three claims under New York law. Plaintiffs sue under both General Business Law §§ 349 and 350, which respectively prohibit "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" and "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." FAC ¶¶ 39-57. It also brings a claim for unjust enrichment under New York common law. FAC ¶¶ 58-61.

---

[2] Unless otherwise specified, all internal quotation marks, citations, elisions, alterations, and emphases are removed from all sources cited herein.

II. **Whether the Label is Misleading**

"To successfully assert a claim under either section [349 or 350], 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675-67 (N.Y. 2012)). "To state a claim for false advertising or deceptive business practices under New York ... law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018).

Mantikas concerned "Cheez-It" crackers labeled as "whole grain" on the box. Id. at 635. It held, in sum, that when a label prominently claims a product is "whole grain" or "made with whole grain," then "the reasonable expectations communicated" are that "the grain content is entirely or at least predominantly whole grain." Id. at 637. The labeling is therefore deceptive if white flour is the predominant ingredient, even if the ingredients list discloses that whole grain flour is also used as a lesser component or the specific amount of whole grain per serving is disclosed. Id. Mantikas explains why disclosure of a product's white flour content on the mandatory ingredients list does not cure a misimpression about whole grain content created by the front label:

> [W]e cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible. Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging. We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.

Id. Since it is undisputed that white flour is the predominant ingredient in Stoned Wheat Thins, Mantikas provides that Mondelēz's motion should be denied if the label would give the reasonable consumer an expectation that the crackers are purporting to be made from "stoneground whole wheat."

On a motion to dismiss, the Court must of course treat all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor to determine if they give rise to a plausible entitlement for relief. See Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

It is accepted that claims under sections 349 and 350 may be dismissed on the pleadings if the court finds that the consumer-facing representations were, as a matter of law, not "likely to mislead a

6

reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995); see also Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013). This is an objective test. However, dismissal is only appropriate where the defendant's "documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 326 (2002). Courts in this district have repeatedly held that "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

The FAC alleges in three ways that reasonable consumers are misled by the Stoned Wheat Thins packaging. The key challenge for plaintiffs is that the label nowhere says "stoneground" or "whole wheat," so the entire weight of the complaint rests on whether a reasonable consumer would interpret the words "Stoned Wheat" in the brand name to imply that the predominant ingredient is whole wheat.

First, the complaint alleges that Randolph bought the crackers "believing that the main ingredient of the Product was stoneground whole wheat flour. Had Plaintiff known the truth that the main ingredient was not stoneground wheat flour (but rather, unbleached enriched flour, a.k.a. "white flour") he would not have bought the Product." FAC ¶ 1. But since the test for deception under sections 349 and 350 is an objective one, and because reliance is not an element of the claims, the plaintiff's personal expectations do not establish

7

that "a reasonable consumer acting reasonably under the circumstances" would be misled by the label. Oswego Laborers', 85 N.Y.2d at 26; see, e.g., Sharpe v. A&W Concentrate Co., 2021 WL 3721392 (E.D.N.Y. July 23, 2021); Kurtz v. Kimberly-Clark Corp., 321 F.R.D. 482, 498-499 (E.D.N.Y. 2017). Therefore, this allegation is irrelevant.

Second, plaintiffs allege that "[t]he Product's name, 'Stoned Wheat Thins' -- which is depicted in bold white print against a contrasting red background-- conveys to reasonable consumers that the Product contains stoneground whole wheat flour. The accompanying graphics of a wheat field under a blue sky reinforce the message of a wholesome, natural product." FAC ¶ 16. The second sentence in this paragraph does not logically support the necessary inference of deception, since neither the fact that wheat is steel-ground nor the predominance of white flour is alleged to make the crackers less "wholesome" or "natural." While the first sentence does describe how the key words in the brand name appear, it is as a whole merely conclusory. It does not explain why consumers would interpret "stoned wheat" to mean "stoneground whole wheat." This allegation is therefore not entitled to the presumption of truth that attaches to factual allegations. Iqbal, 556 U.S. at 664.

Third, the complaint alleges that plaintiffs' counsel conducted a consumer survey and found that "[a] substantial majority of respondents -- 80.1% -- selected 'stoneground wheat flour' as one of the three main ingredients in the Product, the highest percentage for all of the ingredients listed, and 62.9% of them indicated this factor

8

would make them more likely to purchase the Product." FAC ¶ 17. However, the plaintiffs' opposition brief disclaims reliance on the survey for the purpose of the motion to dismiss. Opp. 11 n. 1 ("Plaintiff is not relying on the survey for purposes of defeating Defendant's Motion."). Counsel made this choice, perhaps, because the motion points out that "cracked wheat" (which Mondelēz avers via an attorney declaration is stoneground) is the second-most prevalent ingredient by weight. The survey's structure thus offers no support to the theory of deception asserted in the amended complaint, because the survey establishes only that consumers expect stoneground whole wheat to be <u>a</u> main ingredient in Stoned Wheat Thins, not <u>the</u> main ingredient. In any event, since the plaintiffs disclaim reliance on the allegation, the Court need not consider this allegation.

Mondelēz emphasizes that the label nowhere includes the words "whole wheat" or "stoneground," so the label can only be deceptive if the reasonable consumer would infer from the words "Stoned Wheat" in the product's brand name that the predominant ingredient is stoneground whole wheat flour. Mot. 7. This is a dispositive distinction between this case and the prior "whole wheat" snack cracker cases, including <u>Mantikas</u> and the graham cracker cases, <u>Valcarcel</u>, 2021 WL 6106209, and <u>Campbell</u>, 516 F.Supp. 3d 370. In each of those cases, the box prominently featured the words "whole grain" or "graham," which specifically refers to a form of whole wheat flour. Here, by contrast, the literal words on the box do not assert that the flour is stoneground

or whole wheat, so any such expectation would have to be inferred by consumers.

Randolph's inference relies on two steps: that "stoned" means "stoneground" and that stoneground flour (or "stoned wheat" itself) implies whole wheat flour. Mondelēz disputes both, and the Court concludes that Randolph establishes neither inference.

First, Mondelēz argues that "stoned wheat" does not mean "stoneground wheat," and the complaint nowhere alleges that these phrases are equivalent. Mot. 9. Indeed, the phrases are not the same, and the definition of "stoned" does not describe milling techniques. See Mot. 11 n. 9 (citing dictionaries). Moreover, unlike with "graham flour," which FDA regulations define as a synonym to "whole wheat flour," 21 C.F.R. § 137.200(a), there is no regulatory definition that identifies "stoned wheat" or "stoneground" flour. See Mot. 9-10. Mondelēz argues instead that "Stoned Wheat" should be understood as a trademarked brand name that is not descriptive of the product. Mot. 10. Mondelēz analogizes the use of "stoned" to the trademark "FROOT LOOPS," which a California district court held did not lead consumers to expect that the cereal was made with fruit, McKinnis v. Kellogg USA, 2007 WL 4766060 at *4 (C.D. Cal. Sept. 19, 2007), and the trademark "Sugar in the Raw," which was held not to state that the product was

"raw" or "unprocessed," Rooney v. Cumberland Packing Corp., 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012).[3]

Second, Mondelēz argues that neither "stoneground wheat" nor "stoned wheat" means "whole wheat." Mot. 7-9. While not dispositive of consumer understanding, it is relevant that the FDA's standard of identity for whole wheat does not specify anything about milling technique. See 21 C.F.R. § 137.200. And dictionary definitions of "stoneground" only refer to the milling process, not the content of the resulting flour. See Mot. 7-8 (collecting definitions). Mondelēz also points to various sources explaining that "stoneground wheat" may describe white flour, including government reports of which the Court could take judicial notice and websites cited in the complaint itself and so incorporated by reference therein. See Mot. 8.

Randolph responds that it is common knowledge that crackers are made of flour, so "stoned wheat" should be understood as "stoned wheat flour" and thus "can reasonably mean 'stoneground wheat flour.'" Opp. 6. But the amended complaint nowhere alleges that reasonable consumers reasonably understand "stoned wheat," or even "stoneground wheat" to necessarily imply whole grain. Indeed, when the complaint itself makes various health claims about a superior flour, it refers more specifically to "whole grain stone-ground flour." FAC ¶ 7.

---

[3] These cases were applying California's consumer protection law, not the New York statutes at issue here.

Therefore, the Court concludes that plaintiffs have failed to state a claim under either section 349 or section 350, notwithstanding Mantikas's expansive rule.

### III. The Unjust Enrichment Claim

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." Twohig v. Shop-Rite Supermarkets, Inc., 519 F.Supp.3d 154, 167 (S.D.N.Y., 2021). "However, 'unjust enrichment is not a catchall cause of action to be used when others fail.'" Campbell, 516 F. Supp. 3d at 394 (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777 (2012)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello, 944 N.Y.S.2d at 790. Accordingly, an unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." Campbell, 516 F. Supp. 3d at 393. Here, plaintiffs have offered no explanation of how the unjust enrichment claim differs from the GBL sections 349 and 350, "which seek relief from the same conduct." In re Ford Fusion & C-Max Fuel Econ. Litig., 2015 WL 7018369, at *39 (S.D.N.Y. Nov. 12, 2015). As such, the motion to dismiss the unjust enrichment claim is granted.

## IV. Conclusion

For the reasons set forth above, the Court concludes that the amended complaint fails to state a claim upon which relief may be granted. But since the Court cannot conclude that amendment of the complaint would be futile, and it would produce neither undue delay nor undue prejudice to Mondelēz, plaintiffs are granted leave to file an amended complaint within 30 days of the entry of this order.

SO ORDERED.

New York, NY  
March 29, 2022

_____  
JED S. RAKOFF, U.S.D.J.